MARSTILLER, J.
Appellant, Jakob Floyd, seeks to vacate a two-year protective injunction the trial *1035 court entered against him prohibiting him from having any contact with or committing any violence against a teenaged girl who was his girlfriend for a short period. On appeal, he does not challenge the court’s findings that threats and violence occurred. Rather, he argues his relationship with the girl was not a dating relationship as contemplated under section 786.046, Florida Statutes. Finding competent, substantial evidence in the record that dating violence occurred, see Schutt v. Alfred, 130 So.3d 772, 774 (Fla. 3d DCA 2014), we affirm.
The statute, which provides for protective injunctions against repeat violence, sexual violence and dating violence, reads, in pertinent part:
(1) As used in this section, the term:
[[Image here]]
(d) “Dating violence” means violence between individuals who have or have had a continuing and significant relationship of a romantic or intimate nature. The existence of such a relationship shall be determined based on the consideration of the following factors:
1. A dating relationship must have existed within the past 6 months;
2. The nature of the relationship must have been characterized by the expectation of affection or sexual involvement between the parties; and
3. The frequency and type of interaction between the persons involved in the relationship must have included that the persons have been involved over time and on a continuous basis during the course of the relationship.
The term does not include violence in a casual acquaintanceship or violence between individuals who only have engaged in ordinary fraternization in a business or social context.
(2) There is created a cause of action for an injunction for protection in cases of repeat violence, there is created a separate cause of action for an injunction for protection in cases of dating violence, and there is created a separate cause of action for an injunction for protection in cases of sexual violence.
[[Image here]]
(b) Any person who is the victim of dating violence and has reasonable cause to believe he or she is in imminent danger of becoming the victim of another act of dating violence, or any person who has reasonable cause to believe he or she is in imminent danger of becoming the victim of an act of dating violence, or the parent or legal guardian of any minor child who is living at home and who seeks an injunction for protection against dating violence on behalf of that minor child, has standing in the circuit court to file a sworn petition for an injunction for protection against dating violence.
§ 784.046, Fla. Stat. (2014). Appellee, Karen Walker-Gray, filed a petition for an injunction against dating violence on behalf of her daughter, who was the victim of threatened and actual violence by Jakob.
At the injunction hearing, the victim testified she was 14 years old and attending Orange Park Junior High School in 2014 when she and Jakob, who attended the same school, began “dating” sometime after Christmas 2013. She said they dated “for a few months,” during which time she told people (presumably schoolmates) they were “going out.” They did not go places together without parents, hut they spent time together in school. All was well during the time they were going out. But ■within a week after the victim “broke up with” Jakob, he started threatening to kill her. The threats occurred two to three times per week in class and in the hallways *1036 of the school. Some were overheard. On at least one occasion, the victim testified, Jakob “said he was going to stab me and slice my throat and watch me bleed.” Then, on May 14, 2014, with other students in the classroom, Jakob grabbed the victim’s wrists, shoved her against a filing cabinet and pinned her there, requiring her to struggle to get free.
Jakob contends the evidence before the trial court failed to establish a continuing and significant relationship of a romantic or intimate nature between he and the victim. Instead, he asserts, the evidence merely establishes a casual acquaintanceship or an ordinary social relationship between classmates.
We conclude otherwise. The victim’s testimony demonstrates a relationship more significant than acquaintanceship. The relationship between the 14-year-olds began at Christmastime, included spending time together at school, was held out to others as “going out,” and ended a few months later with a break-up. To be sure, it was not the kind of romantic relationship two adults, or perhaps, two 17-year-olds, would have. Nor would we want middle-schoolers to have such mature relationships. We grown-ups may scoff, but a relationship like that described by the victim, when viewed in the context of two eighth-graders, is reasonably considered dating.[1] We believe section 784.046 contemplates such relationships inasmuch as it gives parents and legal guardians standing to seek dating violence injunctions on behalf of minors, and we find the evidence in this case sufficient to support the trial court’s imposition of the injunction.
While we affirm the court’s finding of dating violence, we note that the court actually entered an injunction titled as one for protection against domestic violence under section 741.30 instead of one for protection against dating violence under section 784.046. This appears to be a clerical mistake, and it can be corrected on remand. See, e.g., Tide v. State, 804 So.2d 412, 414 (Fla. 4th DCA 2001) (finding incorrectly-captioned contempt order to be a clerical error and remanding to trial court for correction); see also Fla. R. Civ. P. 1.540(a) (permitting clerical mistakes in judgments, decrees, or other parts of the record to be corrected by the court at any time). We direct the trial court on remand to enter a corrected order. ■
AFFIRMED; REMANDED with directions.
THOMAS and KELSEY, JJ., concur.

. It appears from the transcript of the injunction hearing that Jakob acknowledged his relationship with the victim was more than a casual acquaintanceship. Louise Axelberg, a child psychologist who testified on Jakob's behalf, stated that from her discussion of the incident with him, she concluded “this was an ex-girlfriend who made the allegations,” Further, “Jakob did say that he — after he breaks up with his ex-girlfriend it's in his— and I thought it was so cute. It's in his moral code not to talk to ex-girlfriends, so he claims he never spoke to the ex-girlfriend after they broke up.” Referring to the victim as an ex-girlfriend reveals that in Jakob’s mind, he and she were dating.